MAYOR AND CITY COUNCIL OF BALTIMORE *vs.* HERBERT R. O'CONOR, State's Attorney.

*State Appropriations—Budget Amendment—Office Expenses and Salaries—Payment of Deficit—Validity of Statute.*

Under the Budget Amendment to the Constitution (article 3, section 52), providing that the General Assembly shall not appropriate money from the State treasury except by a budget bill, or a supplementary appropriation bill, Acts 1924, ch. 576, providing that all monies received by the treasurer from various officers connected with the administration of justice in Baltimore City shall be credited to one account, and that the treasurer shall pay therefrom all deficiencies between the amount of fees collected by any of said officers and his expenses, is invalid.                              pp. 645-651

The General Assembly cannot, by directing that certain State revenue be placed in special accounts in the treasury, secure the right to appropriate it without reference to the requirements of the Budget Amendment.　　　　　　p. 646

While Const., art. 15, sec. 1, authorizes the General Assembly to direct the disposition of the excess funds received by the State treasurer from officers who are paid from fees, such disposition must, since the adoption of the Budget Amendment, be made in accordance with the provisions of that amendment.
pp. 648, 649

The budget bill of 1924 (Acts 1924, ch. 176), providing that monies received by any department or officer from sources other than appropriations, and dedicated by law to some specific purpose, may be disbursed by the treasurer to such department or officer for such purpose, did not authorize the appropriations sought to be made by Acts 1924, ch. 576, for the payment of deficits in certain offices in Baltimore City.
pp. 649, 650

Acts 1924, ch. 576, providing that the salaries and expenses of the office of the State's attorney for Baltimore City shall be paid from the fees of the office, and that in case such fees are insufficient for the purpose, the deficit shall be paid from the excess fees derived from other offices named, is invalid under Const., art 5, sec. 9, requiring such salaries to be paid out of the fees of the State's attorney's office.　　　pp. 651, 652

Under Const., art. 3, sec. 45, providing that the compensation of clerks, registers, assistants and office expenses shall always be paid out of the fees or receipts of the offices respectively, Acts 1924, ch. 576, providing that any deficit in the offices of clerks of court and register of wills in Baltimore City shall be paid out of excess fees derived from other offices, is invalid.
p. 652

Whether the fact that part of a statute is unconstitutional renders another part invalid depends on whether the two parts are essentially and inseparably connected in substance.　　p. 653

The provision of Acts 1924, ch. 576, for the payment of deficits in certain offices in Baltimore City from monies in the State treasury, being unconstitutional, all these offices, with one possible exception, must depend upon fees for salaries and expenses, and consequently the other part of that act, relieving

Baltimore City from liability to pay certain of these fees, is invalid, the two parts being essentially and inseparably connected in substance.                    pp. 653, 654

The obligation of declaring void a statute which plainly contravenes a provision of the Constitution is not less imperative because the statute embodies wise and beneficent legislation.
                                                    p. 654

*Decided April 8th, 1925.*

Appeal from the Superior Court of Baltimore City (FRANK, J.).

Action by Herbert R. O'Conor, State's Attorney for the City of Baltimore, against the Mayor and City Council of Baltimore. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Philip B. Perlman, City Solicitor,* for the appellant.

*Herbert Levy, Assistant Attorney General,* with whom was *Thomas H. Robinson, Attorney General,* on the brief, for the appellee.

WALSH, J., delivered the opinion of the Court.

This suit involves the constitutionality of chapter 576 of the Acts of 1924 of the General Assembly of Maryland, which alters in part the previously existing law regarding the compensation and expenses of the clerks of courts, sheriff, register of wills, and State's attorney of Baltimore City.

The validity of the law as applied to the office of the last named official is the only question presented by the record in this case, but as the determination of this question.

will also decide its validity as to the other offices mentioned, we will pass upon the constitutionality of chapter 576 as a whole.

The office of State's attorney for Baltimore City has been very largely maintained from appearance fees paid to it by the City of Baltimore. There is no statutory or constitutional provision requiring the city to pay these fees, except when an accused person is acquitted, but it has been the immemorial custom of the city to pay them in every case of conviction in which the defendant does not pay them, and in the case of the *Mayor and City Council of Baltimore v. Pattison,* 136 Md. 64, where the question of fees paid by the city in criminal cases to the clerk of the Criminal Court of Baltimore was involved, this Court held that the custom had "been so long and so universally recognized and acted upon as to become a part of the common law of the State." It is conceded in the briefs in the present case that the decision above cited also applies to the appearance fees paid to the State's attorney by the city in cases of conviction, and that, prior to the enactment of chapter 576, the city was required, by the common law of the State, to pay those fees.

Under the provisions of section 1 of article 15 of the Constitution of Maryland, the clerks of the courts, register of wills, sheriff, and the State's attorney of Baltimore City are required annually to remit to the State treasurer whatever surplus of their receipts remains after the payment of the salaries and expenses of their respective offices. For a case holding that the sheriff of Baltimore City is subject to the provisions of this section of the Constitution, see *State v. Green,* 120 Md. 681, 688.

Chapter 576 of the Acts of 1924, which went into effect June 1st, 1924, undertook, among other things, to relieve the City of Baltimore of its common law liability to pay the fees above mentioned, and when the State's attorney presented a bill for the fees earned by his office during June, 1924, amounting to $2,440, payment was refused and this suit

followed. The declaration originally contained the common counts and a special count, but, by agreement, the common counts were withdrawn, a demurrer interposed to the special count, and it was stipulated and agreed by counsel "that all technical errors and irregularities in the pleadings * * * are hereby waived to the end that the only question intended to be raised by these proceedings, viz: The constitutionality *vel non* of chapter 576 of the Acts of 1924, may be submitted to the court for determination." It was conceded that if chapter 576 was valid, the special count was bad and the suit could not be maintained, but the learned court below held chapter 576 invalid, on the ground that it changed the office of State's attorney for Baltimore City from a fee office to a salaried office in violation of section 9 of article 5 of the Constitution. The demurrer to the special count was accordingly overruled, and, the defendant, the Mayor and City Council of Baltimore, declining to plead further, judgment was entered against it, and it took this appeal. In the argument before this Court, four constitutional objections were urged against the act in question, but in the view which we take of the matter it will only be necessary to consider two of these, the alleged violation of the provisions of section 52 of article 3 of the Constitution, commonly known as the Budget Amendment, and the one sustained by the court below.

Omitting the title and enacting clause, chapter 576 reads as follows:

"351-A. The Treasurer of the State is hereby directed to credit to one account all sums of money which may be received by him in pursuance of section 1 of article 15 of the Constitution, from all of the officers connected with the administration of justice in Baltimore City, viz: clerks of courts, sheriff, State's attorney and register of wills; and is hereby directed to pay out of the money in his hands, from time to time, to the credit of said account, whatever sums may be necessary to meet any deficiency or deficiencies between the amount of fees collected by any one

or more of said officers and the amount of the sala-
ries and other expenses authorized by the law of such
officer or officers. The amounts expended for salaries
and other expenses shall be subject to the approval
of the Comptroller. The Comptroller of the State
shall, from time to time, draw warrants upon the State
Treasurer, payable out of the monies in the hands
of said Treasurer to the credit of said account, for
the payment of any such deficiency or deficiencies to
any one or more of said officers, not at any time to
exceed the amount to the credit of said account. In
the event that the amount due to the credit of said
account should not be sufficient at the end of any
year to meet the deficiency or deficiencies of any one
or more of said officers, the additional sum necessary
to meet such deficiency or deficiencies shall be paid
by the Mayor and City Council of Baltimore to such
officer or officers, and, except as provided in this sec-
tion, the Mayor and City Council of Baltimore shall
not be liable for any of the salaries or expenses of
any of said officers, and shall not be liable for the fees
or costs of any of said officers, except in cases where
said Mayor and City Council of Baltimore is a party
litigant, and is chargeable therefor as such party
litigant. In the event that the amount to the credit of
said account shall be more than sufficient to meet said
deficiency or deficiencies, then the excess to the credit
of said account shall be a part of the general revenue
of the State available to meet the appropriations in
the State budget."

Prior to the adoption of the Budget Amendment by the
people of the State in 1916, there was no orderly plan or
system which the General Assembly was required to follow
in disbursing the State's revenues, and as a result appropri-
ations were more or less uncorrelated and deficits in the
State treasury were not unusual. The purpose of the
Budget Amendment was to remedy this situation by provid-
ing an intelligent and definite method of estimating and
appropriating the income of the State.

It provides that "the General Assembly shall not appropriate any money out of the treasury" except by "either a budget bill, or a supplementary appropriation bill, as hereinafter mentioned." It also provides that, within a designated time after the convening of the General Assembly, the Governor shall submit to that body two budgets, one for each of the ensuing fiscal years, containing a complete plan of estimated revenues and proposed expenditures for the particular fiscal year to which it relates, and showing the estimated surplus or deficit of revenues at the end of such year. The Governor also submits a bill for all the proposed appropriations of the budgets clearly itemized and classified, which is known as the budget bill. After this bill has been introduced, the Governor may amend or supplement it, and the General Assembly, subject to certain exceptions, may "strike out or reduce the items therein," but, save as regards the General Assembly and the judiciary, it cannot add to or increase the items in the bill. When passed by the General Assembly, the budget bill becomes a law without further action by the Governor. As defined in the Budget Amendment, a "supplementary appropriation bill" is "a separate bill limited to some single work, object or purpose therein stated," which provides "the revenue necessary to pay the appropriation thereby made by a tax, direct or indirect, to be laid and collected as shall be directed in said bill," and it must be passed in each house on a roll call vote by a majority of the whole number of the members elected, and must be presented to the Governor for his action as provided in section 17 of article 2 of the Constitution.

It was suggested in the argument before this Court that the sole purpose of the Budget Amendment was to do away with "continuing appropriations," which, under the old system, contributed so largely to the confusion and uncertainty which attended the disbursement of the State's revenues. But this contention is obviously unsound. A few words would have sufficed to abolish such appropriations; the amendment goes much further. It establishes an intelligent

and accurate method of gauging the State's financial condition and of spending its money. Under it the Governor is required to present to each General Assembly a balance sheet of the State's finances, together with an estimate of the annual income of the State and also his own views as to how the available portion of that income should be spent in maintaining the State's governmental agencies, and in carrying on the various activities in which the State is engaged. And the General Assembly, though authorized to reduce or strike out many of the items in the bill, is prohibited, except in the two instances heretofore mentioned, from adding to or increasing the various expenditures suggested by the Governor, unless at the same time it provides the revenue needed to meet its new or increased appropriations, and observes the other constitutional requirements relating to "supplementary appropriation bills." The amendment is the expression of the direct will of the people; it is a clear instruction from them to apply to the financial affairs of the State some of the principles of efficiency which private business has long been accustomed to practise, and it is the duty of the courts to give effect to this expression, and to safeguard it whenever necessary.

Chapter 576 of the Acts of 1924 specifically provides that money in the State treasury shall be paid out to meet any deficiencies between income and expenses which may arise in any of the offices mentioned in the act. It is true that the act does provide for placing the excess fees received from any of these offices in one account in the treasury, and limits the appropriation for deficits to the balance in that account, but this cannot be held to exempt the appropriation from the provisions of the Budget Amendment. Once these excess fees are paid into the treasury, as contemplated by the act itself, they must remain in the treasury until withdrawn therefrom in accordance with the provisions of the amendment. If the General Assembly can, by the simple expedient of directing that certain State revenue be placed in special accounts in the treasury, secure the right to appropriate it

without reference to the requirements of the Budget Amendment, then the General Assembly has the power to nullify the amendment. Such a proposal carries its own refutation; but aside from this consideration, the plain and unambiguous language of the amendment itself clearly prohibits the General Assembly from "appropriating any money out of the treasury except in accordance with" the provisions of the amendment.

The appellant relies on certain language used by Judge Urner in deciding the case of *Baughman v. Riggs,* tried before the Circuit Court for Montgomery County, and reported in the Daily Record of January 12th, 1923. That case involved the constitutionality of chapters 259 and 263 of the Acts of 1922, which sought to create a special police force for Montgomery County, and to provide for its maintenance from funds derived from convictions in that county under the motor vehicle law. The only question before the Court was the validity of the titles to the acts, and in the course of his opinion, holding that the titles were in part defective, Judge Urner said:

"The Legislature undoubtedly had power to pass just such acts as these we are considering. It could have provided that funds derived from convictions under the motor vehicle law in Montgomery County should thereafter be paid to the county commissioners instead of to the motor vehicle commissioner."

We cannot agree with the contention of the able counsel for the appellant that this statement is any authority for chapter 576. The acts before Judge Urner did not appropriate any money from the State treasury; they simply sought to divert to certain local uses money which would ordinarily have gone to the commissioner of motor vehicles, and part of which would no doubt have eventually reached the treasury. This is quite different from appropriating money after it has been paid into the State treasury.

Under the provisions of section 1 of article 15 of the Constitution, the excess fees from the offices mentioned in

chapter 576 must be paid into the State treasury, and, in
obedience to this constitutional provision, the act itself as-
sumes that these excess fees will be paid to the State treas-
urer. It thus appears that this particular part of the State's
revenue could not be diverted before it reached the State
treasury, and hence the above quotation from an opinion
given in a case involving acts which sought to divert money
which the Constitution did not require should be paid into
the State treasury does not and could not have any appli-
cation to the present case.

It is also contended by the appellant that chapter 576 is
authorized by that part of section 1 of article 15 which pro-
vides that the excess fees paid to the treasury under that sec-
tion shall be "subject to such disposition thereof as the
General Assembly may direct," and it is urged that the case
of *Mayor and City Council of Baltimore v. Pattison, supra,*
decided this. The question in that case, as we have seen
above, was the liability *vel non* of the City of Baltimore for
certain clerk's fees, and in commenting on the argument
that the payment of the excess of these fees to the State
treasurer for general use constituted an inequality in taxa-
tion, the Court said: "This contention might be made the
basis of an appeal to the Legislature to correct any inequali-
ties of the nature complained of which may be produced by
the operation of the present system. The General Assembly
has power to accomplish the purpose of such an appeal under
the authority reserved to it by the Constitution (section 1
of article 15), to direct the disposition of the excess funds
received by the State treasurer from the clerks." The Gen-
eral Assembly undoubtedly has this power, but since the
passage of the Budget Amendment it must exercise its power
in the manner prescribed by that amendment. The amend-
ment was not involved in any way in the *Pattison* case, and
it is not mentioned in the Court's opinion, but even if it had
been, there is nothing in the language used to intimate that
this Court meant to hold that the General Assembly could
appropriate money out of the State treasury without comply-
ing with the plain provisions of the Budget Amendment.

Nor is there any conflict between section 1 of article 15, and the amendment. The former authorizes the General Assembly to dispose of the excess fees, and the latter provides the method by which this must be done. The provision that the General Assembly could dispose of these excess fees did not mean that they could be disposed of without regard to the other constitutional requirements regulating the passage and enactment of appropriation bills, and upon the adoption of the Budget Amendment the appropriation of these fees became subject to its provisions just as did the appropriation of all other money in the State treasury.

From what we have said it is obvious that, since the money which chapter 576 seeks to appropriate is in the State treasury, it cannot be gotten out of the treasury except in the manner provided in the Budget Amendment, and under that amendment the appropriations provided for in chapter 576 would be invalid unless made by the budget bill itself, or by a supplementary appropriation bill. It is not contended that chapter 576 is a supplementary appropriation bill, or that the money it attempts to appropriate is specifically appropriated by the budget bill, but it is urged that the appropriation made by the act in question is authorized by the budget bill passed by the last Legislature (chapter 176 of the Acts of 1924), section 9 of which provides: "That all moneys received by any department, board, commission, officer or institution of the State, from sources other than appropriations made in the budget, and dedicated by any Act of Congress or laws of this State to some specific purpose or purposes, and which have been accounted for to the comptroller and paid into the treasury, may be disbursed by the treasurer, upon warrant of the comptroller, to such department, board, commission, officer or institution for the purpose or purposes for which the same are dedicated."

It is contended that chapter 576 fulfills all the requirements of this section, and that hence the appropriations provided for by this act are appropriations authorized in the budget bill, but to this we cannot assent. We are advised

by the Attorney General in his brief in this case that the purpose of the above section was to make possible a centralized bookkeeping system showing all monies spent by the State. It seems that funds received as federal aid, county matching appropriations, and from certain other sources, which were dedicated to special purposes and not considered in making up the budget or the budget bill, were never paid into the State treasury because of the fear of the various departments receiving these funds that, under the Budget Amendment, they could not be gotten out of the treasury. As a result the comptroller's office had no record of these funds, and his books failed to show all the money spent each year by the various State departments, and section 9 was passed to remedy this difficulty. Without expressing any opinion as to the validity of section 9 for any purpose, it is clearly invalid as an authorization of the appropriations sought to be made by chapter 576. These appropriations are contingent, and uncertain as to amount, and, as they are made from money which the Constitution requires to be paid into the treasury, they might, under some circumstances, be held to violate the spirit if not the letter of the Budget Amendment, because they create uncertainty as to the money available for general appropriations. They are in a sense continuing appropriations, because there is nothing in chapter 576 which limits its effectiveness to any particular period of time. Hence, if the act was held good now because of section 9 of the current budget bill, and the next budget bill did not contain a similar section, we would have the absurd situation of a law becoming unconstitutional because of the failure of the Legislature to pass another law making it valid. And finally, if chapter 576 were held valid because of section 9, it would mean that the Governor could delegate to the General Assembly the power to fix the items and amounts of the budget bill, and the Budget Amendment would be destroyed. We accordingly find that the act in question is not a budget bill, nor are the appropriations contained in it authorized by the present budget bill.

Since chapter 576 is neither a budget bill nor a supplementary appropriation bill, it follows, from what we have heretofore said, that in so far as it attempts to appropriate money from the State treasury for the payment of deficits in the offices of the State's attorney, register of wills, clerks of courts, and sheriff of Baltimore City, it contravenes the provisions of the Budget Amendment and is unconstitutional and void.

The lower court held chapter 576 invalid on the ground that it changed the office of State's attorney for Baltimore City from a fee office to a salaried office in violation of section 9 of article 5 of the Constitution. This section concludes as follows:

"That the State's attorney for Baltimore City shall receive an annual salary of $5,400, and shall appoint one deputy at an annual salary not exceeding $4,000, and such other assistants at such annual salaries not exceeding $2,500 each, as the Supreme Bench of Baltimore City may authorize and approve; all of said salaries to be paid out of the fees of the said State's attorney's office, as has heretofore been practiced."

Chapter 576 provides that the salaries and expenses of the office of the State's attorney for Baltimore City shall be paid from the fees of that office, but it also provides that, in case the fees of that office prove insufficient to pay the salaries and expenses, the deficit shall be paid from the excess fees derived from the other offices mentioned in the act. The Constitution requires *"all of said salaries to be paid out of the fees of the said State's attorney's office, as* has heretofore been practiced." The conflict between these provisions is obvious and unescapable, at least in so far as the salaries of the State's attorney's office are concerned. Whether or not a valid distinction could be drawn between "salaries" and "expenses" it is unnecessary for us to decide, because no distinction is made between them in chapter 576, but so far as the "salaries" of the States' attorney's office are concerned, the learned court below was clearly right in holding that

they must be paid from the fees of that office, and that the act in question was invalid in so far as it attempted to change this constitutional requirement by providing that any deficit in that office should be paid from excess fees derived from other offices. For the same reasons the act is void in regard to the payment of deficits in the offices of the clerks of courts and register of wills, section 45 of article 3 of the Constitution providing that the "compensation of clerks, registers, assistants and office expenses shall always be paid out of the fees or receipts of the offices respectively." And as regards these offices, the language of the Constitution itself precludes any distinction being drawn between "salaries" or "compensation," and "expenses," because both items are specifically mentioned. Counsel for the appellant insists that the history of legislation in this State is at variance with this construction of the constitutional provisions just cited, and refers us to chapter 54 of the Acts of 1868 (section 14 of article 17 of the Code of 1924) to support his contention. That act pools all of the excess fees received from the offices of the clerks of courts of Baltimore City, and makes this fund liable for any deficiencies in any of the clerk's offices. The constitutionality of this act has, so far as we are advised, never been challenged, and we are not to be understood as expressing any opinion on it in this case, but whether valid or not, it is clearly distinguishable from the act now before us. The former act pools only the excess fees from the clerks' offices in Baltimore City for the benefit of the clerks, whereas the act we are considering undertakes to place, in one fund, the excess fees from the offices of the sheriff, clerks, register of wills and State's attorney, and to render that fund liable for deficits in any of the offices mentioned. In view of these differences there would seem to be little force in the argument that chapter 54 of the Acts of 1868 furnishes any legislative precedent for chapter 576 of the Acts of 1924, and even if it did, such precedent, though entitled to consideration, would not be binding upon us in determining the validity of the later act.

Since our attention has not been called to any specific provision of the Constitution requiring the sheriff of Baltimore City to be paid only from the fees of his office, and we know of no such requirement, we express no opinion as to the validity of chapter 576 in so far as it makes the sheriff's office a salaried one, though of course the attempt to appropriate part of the sheriff's salary and expenses from the State treasury is, as we said above, void because it violates the provisions of the Budget Amendment.

The remaining point to be considered is whether or not the defective portions of chapter 576 will require us to hold the entire act invalid. "A statute may be good in part, while other parts are invalid. If a portion be unconstitutional, the Court is not authorized, for that reason, to declare the whole void." *State v. Davis,* 7 Md. 151. In *Commonwealth v. Hitchings,* 5 Gray, 482, where the same rule of construction was adopted, the court said: "The constitutional and unconstitutional provisions may even be contained in the same sections, and yet be perfectly distinct and separable, so that the first may stand, though the last fall. The point is, not whether they are contained in the same section, for the distribution into sections is purely artificial; but *whether they are essentially and inseparably connected in substance."* Both of these statements were quoted with approval by this Court in the case of *Painter v. Mattfeldt,* 119 Md. 466, and the principles announced are undoubtedly the law of this State. See also *Hagerstown v. Dechert,* 32 Md. 369.

Tested by these rules, it seems obvious that no part of chapter 576 is valid. We have held that the provisions of the law relating to the payment of any deficits in the offices mentioned from money in the State treasury, were void, and hence all of these offices, with the possible exception of the sheriff's office, must depend upon fees for their salaries and expenses. The other salient part of the act is the provision relieving Baltimore City from its liability to pay certain of these fees, and to hold this good, and the portion taking care of any deficit thus occasioned bad, would certainly give

rise to an anomalous situation. The two provisions are intertwined and dependent on each other, and both are so intimately related to the main purpose of the act as to be, in our opinion, "essentially and inseparably connected in substance." Nor would it be proper to assume that the Legislature intended to deprive three of these offices of certain revenue which they have always enjoyed, although the provision it made in the same act to supply other revenue in place of it was held void. It follows that the act must be held unconstitutional in so far as it relates to the offices of the State's attorney, register of wills and clerks of courts of Baltimore City, and, in our opinion, to hold valid that part of the act which relieves Baltimore City of its liability to pay certain fees to the sheriff, though all the rest is void, would be extending beyond reason the principle of law which permits part of an act to be declared valid and part of it invalid. We are accordingly compelled to hold that chapter 576 of the Acts of 1924 is wholly unconstitutional and void.

We are not unmindful of the rule that every presumption favors the validity of an act of the Legislature, and it is with the utmost reluctance that we declare void the action of a co-ordinate branch of the government, but where a statute plainly contravenes any of the provisions of the Constitution we are charged with the duty of declaring it void, and this obligation is rendered none the less imperative because the proposed law may embody wise and beneficient legislation.

It should be noted that by a constitutional amendment, adopted in November, 1924, certain changes were made in the provisions regulating the office of the State's attorney for Baltimore City, but for the purposes of the present case it was, of course, necessary to deal with the Constitution as it existed prior to the adoption of that amendment. The judgment of the lower court will be affirmed.

*Judgment affirmed, the appellant to pay the costs.*