## BURKE, Trustee, et al. *v.* FIDELITY TRUST COMPANY

[No. 114, October Term, 1952.]

*Decided April 17, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*C. Keating Bowie, Jr.,* with whom were *Bowie, Burke & Leonard* on the brief, for the appellants.

*James T. Carter* and *Frederick W. Brune,* with whom were *John H. Mudd* and *Semmes, Bowen & Semmes* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order dismissing a bill of complaint filed by certain stockholders of Calvert Bank, who dissented from its merger with the Fidelity Trust Company, to have the fair value of their stock determined by a proceeding in the equity court. The facts are not

in dispute. The appellants hold 88 of the 12,000 outstanding shares of stock of Calvert Bank. Under the terms of the merger, effective February 1, 1952 and duly approved by the Bank Commissioner of Maryland, two shares of Fidelity stock were to be exchanged for one share of Calvert stock. The appellants received due notice of the proposed merger, and on January 25, 1952, each filed with Calvert Bank an objection in writing. They did not attend the stockholders' meeting called for and held on January 29, 1952, and did not vote for or against the proposed merger. On February 8, 1952, they served upon the surviving corporation a written demand for payment for their stock of the Calvert Bank. They did not surrender their stock certificates.

Section 113, Article 11 of the 1951 Code, as enacted by Section 107E, Chapter 20, Acts of 1951, provides in part: "(b) The notice of the meeting of stockholders shall state that dissenting stockholders will be entitled to payment of the value of only those shares which are voted against approval of the plan.

"(c) The owner of shares which were voted against the approval of the merger shall be entitled to receive their value in cash, if and when the merger becomes effective, upon written demand, made to the resulting state bank at any time within thirty days after the effective date of the merger, accompanied by the surrender of the stock certificates. The value of such shares shall be determined as of the date of shareholders' meeting approving the merger by three appraisers, one to be selected by the owners of two-thirds of the shares involved, one by the board of directors of the resulting state bank, and the third by the two so chosen, but, if the value so fixed shall not be satisfactory to any dissenting shareholder who has requested payment as provided herein, such shareholder may within five days after being notified of the appraised value of his shares appeal to the Bank Commissioner, who shall cause a reappraisal to be made, which shall be final and binding as to the value of the shares of the appellant. The

valuation agreed upon by any two appraisers shall govern. If the appraisal is not completed within ninety days after the merger becomes effective the Bank Commissioner shall cause an appraisal to be made." Sub-section (d) requires the resulting state bank to pay the expenses of appraisal. Sub-section (e) authorizes it to "fix an amount which it considers to be not more than the fair market value of the shares of a constituent bank", and offer the same in cash to dissenters. If the offer is accepted, the right to an appraisal is barred. "The amount due under such accepted offer or under the appraisal shall constitute a debt of the resulting state bank."

Chapter 20 was enacted as an emergency measure and approved February 21, 1951. It repealed Section 76 of Article 11, relating to bank mergers, and adopted a new subtitle "Mergers", covering the whole subject. It contained a separability clause applicable not only to sections but to any "subsection, sentence, clause or other provision". The appellants concede that both in the notice of stockholders' meeting and in the merger agreement they were notified of their rights under this Act. The notice specifically referred to the condition of voting against the approval of the merger. They do not challenge the validity or effectiveness of the merger. They concede that if Section 113 is applicable and valid, they have not complied with its provisions and are not entitled to an appraisal. They contend, however, that Section 113 is invalid and unconstitutional and that their rights are governed by Section 69, Article 23 of the 1951 Code, as enacted by Chapter 135, Acts of 1951, effective June 1, 1951 and applicable to corporations generally.

Section 69 provides that in case of merger an objecting stockholder of the non-surviving corporation is entitled to "payment of an amount equal to the fair value of his stock", if he files objection in writing to the proposed action submitted and does not vote in favor of it. If unwilling to accept any "written offer to pay for his stock

a price deemed by the successor to be the fair value of such stock", the objector may petition a court of equity to "determine the fair value of such stock" as of the date of the stockholders' meeting. The court is directed to appoint three disinterested appraisers, to consider their report and to hold hearings if exceptions are filed thereto, to "enter an order confirming, modifying or rejecting the same", and enter judgment thereon including interest from the date of the stockholders' meeting. The judgment shall have the same effect as a decree in equity, with a right of appeal to this court. Section 1(e) of Article 23 provides that "In the event of any inconsistency between any of the provisions of this Article or any other Article of the Annotated Code of Maryland, relating to particular classes of corporations and the provisions of this Article which are of general applicability, the former shall prevail to the extent of such inconsistency; * * *". Obviously, this saving clause forecloses any argument of implied repeal of Section 113, Article 11, or the other sections relating to bank mergers. The appellants rest their case upon the constitutional invalidity of Section 113.

The appellee contends, and the Chancellor held, that even assuming that the appraisal provisions of Section 113 are invalid, the appellants have no standing to sue because they did not vote against the proposed merger. The argument is that this prerequisite to an appraisal, though omitted from Section 69, Article 23, would survive, under the severability clause, even though the rest of Section 113 should be stricken down. We think, however, that such a prerequisite is so intimately related to and integrated with the method of appraisal set up in Section 113 that it could not survive. A severability clause is merely an aid to interpretation and not an inexorable command. The test is whether it can be reasonably supposed that the legislature would have been satisfied to adopt the valid portion, with the invalid portions eliminated. *Bell v. Prince George's Co.*, 195 Md. 21, 32, 72 A. 2d 746; *Baltimore v. O'Conor*, 147 Md. 639,

653, 128 A. 759, 40 A. L. R. 1058. The requirement of voting against the merger is a perfectly proper one. *Roselle Park Trust Co. v. Ward Baking Corporation,* 177 Md. 212, 221, 9 A. 2d 228. But we think the legislature would hardly have imposed this restriction upon bank stockholders as a class, if all the rest of the appraisal procedure was to be governed by Article 23.

If Section 113, Article 11, is invalid in its entirety, the provisions of the repealed section 76 would come into play, and the dissenters' rights would be "the same as the rights of a dissenting stockholder of an ordinary business corporation of this State". Curiously enough, until the adoption of Section 69, Article 23, by Chapter 135, Acts of 1951, the general corporation law contained a requirement of voting against a merger, in Section 37, Article 23 of the Code of 1939 and Section 37A, added by Chapter 452, Acts of 1949. However, it is not contended that the appellants would be remitted to the remedy existing prior to the adoption of Chapter 135, Acts of 1951. Since we cannot find that the appellants lack standing to sue if their premise is assumed, it is necessary to consider the constitutional validity of Section 113.

The appellants contend that Section 113 is a special law passed to cover a situation "for which provision has been made by an existing general law", as forbidden by Section 33, Article III of the Maryland Constitution. We do not agree. Banks have always been dealt with as a separate class of corporations; indeed the Maryland constitution, Section 48, Article III, authorizing the formation of corporations under general laws, contains a proviso that "nothing herein contained shall be construed to extend to banks or the incorporation thereof". That the business of banking bears such a relation to the economic security of the public as to be a legitimate subject of regulation by the State in the exercise of its police power, and of separate treatment, by classification not plainly unreasonable or arbitrary, needs no elaboration. *Weer v. Page,* 155 Md. 86, 91,

92, 141 A. 518. Moreover, it is inaccurate to state that prior to the enactment of Chapter 20 of the Acts of 1951 the rights of dissenting stockholders in bank mergers were provided for by existing general law within the meaning of Section 33, Article III of the Constitution. Their rights were spelled out in Section 76, Article 11 of the Code of 1939 which was repealed by Chapter 20. The fact that Section 76 incorporated by reference the merger procedure applicable to corporations generally, does not alter the case, or convert a change by amendment of Article 11 into a special law. *Cf. Hodges v. Baltimore Union P. Ry. Co.*, 58 Md. 603, 621, and *Gebhart v. Hill*, 189 Md. 135, 141, 54 A. 2d 315. Chapter 20, as explained in the report of the Legislative Council, was "mainly intended to facilitate mergers from national to state banks", as authorized by Act of Congress under certain conditions. It was "drafted by the Model State Bank Code Committee of the American Bankers' Association to supplement the Act of Congress." The fact that it applied the same procedure to mergers of State banks as to mergers of national and State banks with a resulting State bank, does not indicate that the classification was unreasonable or arbitrary, but quite the contrary. It may be noted that the appraisal provisions of Section 113 are substantially the same as those prescribed by Sections 34a and 214b, Title 12, U. S. C. A., applicable to national banks.

The appellants contend that Section 113, Article 11, insofar as it affects their right to a valuation reviewable by a court and to an appealable judgment under Section 69, Article 23, or the comparable earlier provisions of Article 23, impairs the obligation of their contract in violation of Section 10, Article 1 of the federal constitution. Section 48, Article III of the Maryland constitution reserves to the State the power to alter or repeal charters of corporations, and the appellee argues that the change is well within the power reserved, citing *Ghingher v. Bachtell*, 169 Md. 678, 182 A. 558, affirmed by the Supreme Court *sub nom. Stockholders of Peoples*

*Banking Co. v. Sterling,* 300 U. S. 175, 183, 57 S. Ct. 386, 81 L. Ed. 586. But see *Treigle v. Acme Homestead Assn.,* 297 U. S. 189, 56 S. Ct. 408, 80 L. Ed. 575. As a matter of fact, one of the appellants did not acquire his shares until July, 1951, after the adoption of Chapter 20.

We shall assume, without deciding, that the rights of existing stockholders would be impaired by an unqualified repeal of appraisal provisions. It does not follow that a change in remedy would impair the charter contract, if the substituted remedy is reasonably adequate and effective. *Nagel v. Ghingher,* 166 Md. 231, 240, 171 A. 65, 92 A. L. R. 1315; *Bettendorf Co. v. Field,* 114 Md. 487, 79 A. 724; *Pittsburg Steel Co. v. Baltimore Equitable Soc.,* 113 Md. 77, 77 A. 255; *Miners Bank v. Snyder,* 100 Md. 57, 59 A. 707, 68 A. L. R. 312. The appellants argue that a wholly different standard of valuation is set up by Section 113. We think not. The term "value" used in the new section is as precise and has no different connotation from the term "fair value" in Section 69. It has been held that the terms "value", "fair value" and "fair cash value" are "practically synonymous". *Chicago Corporation v. Munds,* 20 Del. Ch. 142, 172 A. 452, 455. See also the cases collected in notes 174 A. L. R. 960 and 162 A. L. R. 1237. The fact that the corporation may not offer more than the market value does not mean that the appraisers are so limited. The meaning of "fair value" was fully expounded by this court in *American Gen. Corp. v. Camp,* 171 Md. 629, 640, 190 A. 225, 230. It was there said that the decision of the commissioners making the appraisal was entitled to great weight and would not be disturbed unless it appeared "by clear and satisfactory evidence that the award was, by reason of some material and prejudicial error of law, in conduct or of fact, not the fair value of the stock, without regard to any depreciation or appreciation thereof in consequence of the merger or consolidation."

The appellants stress the fact that instead of a judgment, they are only entitled to an award that is a debt of the resulting bank. But it does not follow that the substituted remedy will not be equally effective. A similar change in procedure was put into effect with the adoption of the Workmen's Compensation Act, but this was not held to be fatal. *Solvuca v. Ryan & Reilly Co.*, 131 Md. 265, 101 A. 710; *Mattare v. Cunningham*, 148 Md. 309, 314, 129 A. 654. The award in compensation cases, which was substituted for a judgment at law, has only the status of a specialty, and is not a judgment. They also stress the fact that Section 69 specifies that interest shall be included in the judgment from the date of the stockholders' meeting, whereas Section 113 is silent on the subject. If we assume, without deciding, that interest is not allowable under Section 113, the Legislature evidently considered the strict time limitation as a fair substitute. Interest, as such, plays no part in the valuation, and its allowance was probably designed to impose a penalty for undue delays. *Cf. American Gen. Corp. v. Camp, supra*, 179 Md. at page 642, 190 A. 225. The fact that a dissenter must surrender his certificate, under Section 113, is likewise immaterial. Under Section 69, he must submit his certificate to the Clerk of the Court for notation thereon of the pendency of the appraisal proceeding.

The appellants' chief contention seems to be that the remedy afforded by Section 113 is invalid because it deprives them of a judicial determination of their rights and attempts to substitute compulsory arbitration plus an administrative remedy. They invoke the due process clause of the 14th amendment to the federal constitution and Article 23 of the Maryland Declaration of Rights, as well as the separation of powers provision, Article 8 of the Maryland Declaration of Rights, and the judicial power provision, Section 1, Article IV of the Maryland constitution. We see no reason why a determination of value may not be left in the first instance to appraisers selected by the parties under Section 113 instead of to

appraisers appointed by the court under Section 69. It has been said that appraisal is not a judicial function; we find nothing in any of the statutes to indicate that the court should substitute its judgment for that of the appraisers. Moreover, due process does not necessarily mean judicial process. It is sufficient if there is at some stage an opportunity to be heard suitable to the occasion and an opportunity for judicial review at least to ascertain whether the fundamental elements of due process have been met. *Anderson National Bank v. Luckett*, 321 U. S. 233, 246, 64 S. Ct. 599, 88 L. Ed. 692; *Hardware Dealers Mutual Fire Ins. Co. v. Glidden Co.*, 284 U. S. 151, 159, 160, 52 S. Ct. 69, 79 L. Ed. 214.

The fact that Section 113 is silent as to notice to or hearing of the dissenters in connection with the determination of value by the appraisers or by the Bank Commissioner does not vitiate it. *Weer v. Page, supra; Toombs v. Citizens Bank,* 281 U. S. 643, 50 S. Ct. 434, 74 L. Ed. 1088; *Bratton v. Chandler,* 260 U. S. 110, 43 S. Ct. 43, 67 L. Ed. 157; *Cofman v. Ousterhous,* 40 N. D. 390, 168 N. W. 826, 18 A. L. R. 219. It may well be that such rights are implicit in the statute, or would be read in if necessary to sustain its constitutionality. We cannot assume that they would be denied to dissenters. Even though the statute does not authorize an appeal from a final determination of value, review may be had to determine whether the action was contrary to law, unsupported by substantial evidence, or otherwise arbitrary, unreasonable or beyond the limits of due process. *Hecht v. Crook,* 184 Md. 271, 40 A. 2d 673; *Heaps v. Cobb,* 185 Md. 372, 45 A. 2d 73; *Mahoney v. Byers,* 187 Md. 81, 48 A. 2d 600; *Hammond v. Love,* 187 Md. 138, 49 A. 2d 75; *Dunstan v. Bethlehem Steel Co.*, 187 Md. 571, 51 A. 2d 288; *Bogley v. Barber,* 194 Md. 632, 72 A. 2d 17.

The argument that Section 113 confers judicial power upon the Bank Commissioner is without merit. A similar contention was answered in *Solvuca v. Ryan & Reilly Co., supra,* and *Mattare v. Cunningham, supra.* See

also *Hecht v. Crook, supra,* and *Heaps v. Cobb, supra,* distinguishing *Dal Maso v. Board of County Commrs.,* 182 Md. 200, 34 A. 2d 464, relied on by the appellants. The substitution of compulsory arbitration and administrative review for a judicial valuation is not beyond the constitutional power of the legislature, so long as there is an opportunity for court review to pass on the legality and due process aspects of the award. *Hardware Dealers Mutual Fire Ins. Co. v. Glidden Co., supra,* is directly in point on this proposition. We cannot assume that the action taken would have been arbitrary or have failed to take into account all the proper elements of value.

*Order affirmed, with costs.*