**COMMUNITY BANK OF ARIZONA, National Association, Plaintiff–counter–defendant–Appellee,**

v.

**G.V.M. TRUST; Dallas C. Gant, Jr.; Gary E. Johnson Ira; Pauline Johnson Ira; Gary E. Johnson; Timothy Johnson; Kathleen Jones Ira; Kathleen Jones Self–Directed Ira; Thomas G. Jones Ira; Thomas G. Jones Self–Directed Ira; Kathleen Jones; Thomas G. Jones; Vance B. Miller; and Vance B. Miller, Trustee for Miller Clinic, Ltd. Profit Sharing Plan, Defendants–counterclaimants–Appellants.**

---

No. 03–15305.

United States Court of Appeals, Ninth Circuit.

Submitted March 12, 2004.*

Filed May 7, 2004.

* This panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

Richard A. Segal, Gust Rosenfeld, P.L.C., Phoenix, AZ, for the defendants/counterclaimants-appellants.

Peter W. Carter, Dorsey & Whitney LLP, Minneapolis, MN, for the plaintiff/counter-defendant-appellee.

Before HALL, T.G. NELSON, and GRABER, Circuit Judges.

GRABER, Circuit Judge.

We must decide whether Arizona's general corporate law appraisal procedures or the default appraisal procedures set out in the National Bank Consolidation and Merger Act ("Act"), 12 U.S.C. § 215a, govern the appraisal of dissenting shareholders' shares when an Arizona state bank merges into a national banking association. The question is one of first impression in this circuit. We hold that, when a state has enacted no statute providing for the appraisal of dissenters' shares in the specific context of banking, the default appraisal procedures of the federal Act apply. Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A majority of the shareholders of Plaintiff Community Bank of Arizona, an Arizona state-chartered banking corporation, voted to merge into the New Community Bank of Arizona, a national bank. The notice announcing the special meeting to vote on the proposed merger also set the value of each share of Plaintiff's common stock at $119.86. The notice stated that, in order to perfect their dissenters' rights, dissenting shareholders "must carefully follow the procedures prescribed by Section 215a of the [Act], 12 U.S.C. § 215a."

Instead, Defendants—G.V.M. Trust and several other dissenting shareholders of Community Bank of Arizona—demanded payment of the fair value of their shares pursuant to Arizona Revised Statutes §§ 10–1320 to 10–1331, asserting that state law rather than federal law supplied the relevant appraisal procedure.[1] In their written demand for payment, Defendants pegged the fair value of their shares at $187 each.

Plaintiff then commenced this action in district court, seeking a declaration that the merger of New Community Bank and Community Bank, and all issues related to that merger, are governed by the [Act], and that any dissenting shareholders who seek additional consideration for their shares must pursue the appraisal proceeding under the auspices of the Comptroller of the Currency set forth in 12 U.S.C. § 215a. Defendants duly filed an answer and counterclaim. The answer asked the district court to declare that the dissenters' rights should be determined in accordance with the procedure set forth in Ariz.Rev.Stat.

§§ 10–1320 to 10–1331. The counterclaim requested payment in favor of each defendant in the amount of $187 per share owned.

The district court granted summary judgment in favor of Plaintiff, holding that the procedures set forth in the federal Act, rather than the procedures set forth in Arizona statutes, governed the valuation of Defendants' shares. This timely appeal followed.

## STANDARD OF REVIEW

■ We review de novo a district court's grant of summary judgment. *United States v. City of Tacoma*, 332 F.3d 574, 578 (9th Cir.2003). We may affirm a district court's grant of summary judgment on any ground supported by the record. *United States ex rel. Ali v. Daniel, Mann, Johnson & Mendenhall*, 355 F.3d 1140, 1144 (9th Cir.2004). We also review de novo a district court's interpretation and construction of state and federal law. *Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1086 n. 3 (9th Cir. 2003); *SEC v. McCarthy*, 322 F.3d 650, 654 (9th Cir.2003).

## DISCUSSION

### A. *Section 215a(d) of the Act*

At the heart of this dispute lies the proper interpretation of 12 U.S.C. § 215a(d), the subsection of the Act addressing the appraisal of dissenting shareholders' shares in the context of the merger of a state bank into a national banking association. As its title reveals, § 215a regulates the "[m]erger of national banks or State banks into national banks."

---

1. The most prominent distinction between the procedures available under the federal Act and those available under Arizona law is that the latter provides for a judicial determination of the fair value of dissenting shareholders' shares, Ariz.Rev.Stat. § 10–1330, rather than relying on the judgment of a panel of three appraisers selected by the parties, 12 U.S.C. § 215a(c).

Section 215a(a) addresses the merging bank's requirement to notify its shareholders of a plan of merger and to have that plan

ratified and confirmed by the affirmative vote of the shareholders of each such association or State bank owning at least two-thirds of its capital stock outstanding, or by a greater proportion of such capital stock in the case of a State bank if the laws of the State where it is organized so require....

12 U.S.C. § 215a(a)(2).

Section 215a(b) secures the right of a shareholder of the merging state or national bank who dissents to the vote in favor of a merger—a dissenting shareholder—to receive the value of the shares owned in exchange for the surrender of the merging bank's stock certificates, once the merger is approved. Section 215a(b) also explains the procedure that the dissenting shareholder must follow to perfect that right.

Section 215a(c) sets out the process by which the dissenting shareholder's shares are appraised. Under § 215a(c), the merging bank's board of directors selects one appraiser, the dissenting shareholders select another, and the two appraisers so chosen select a third. The appraised value agreed upon by any two of the three appraisers shall govern. However, any dissenting shareholder who is dissatisfied with the appraised value arrived at by this method has the right to appeal to the Comptroller of Currency, "who shall cause a reappraisal to be made which shall be final and binding." 12 U.S.C. § 215a(c).

▮ Section 215a(d), the subsection at issue here, is something of a "clean-up" provision with respect to the shares of dissenting shareholders. Section 215a(d) discusses, among other things, particular aspects of the Comptroller's own appraisal of shares. For example, it provides for an initial appraisal by the Comptroller when two appraisers fail to agree on a third appraiser, or when the appraisers fail to determine the value of dissenters' shares. Section 215a(d) requires the merging bank to pay the expenses of the Comptroller in making an appraisal or reappraisal. It also sets out the procedure for auctioning the surrendered shares of dissenting shareholders and paying to the dissenting shareholders any amount by which the auction price for those shares exceeds their appraised value. Finally, § 215a(d) contains the following provision concerning appraisal procedures for merging state banks:

The appraisal of such shares of stock in any State bank shall be determined in the manner prescribed by the law of the State in such cases, rather than as provided in this section, if such provision is made in the State law; and no such merger shall be in contravention of the law of the State under which such bank is incorporated.

12 U.S.C. § 215a(d).

The parties' dispute concerns the scope of § 215a(d)'s deference to state law. The statute requires the appraisal to be "in the manner prescribed by the law of the State *in such cases ... if such provision* is made in the State law." *Id.* (emphasis added). However, the federal statute itself does not define the term "such cases" or the term "such provision." Plaintiff argues that by including the conditional phrase "if such provision is made in the State law," Congress intended to defer to state law only when a state has enacted a statute that regulates the appraisal remedy specifically in the context of bank mergers. For their part, Defendants contend that, because nothing in the statute limits Congress' intended deference to state law to a state's *banking* law, a proper interpretation of the federal Act requires the use of a state's general corporate law appraisal

procedures whenever a shareholder of a state bank dissents from a plan of merger under § 215a.

Defendant's interpretation, however, would effectively render meaningless the default appraisal procedures, outlined in § 215a(c), when a state bank merges with a national bank. Nearly every state's corporate law sets forth an appraisal procedure to determine the value of dissenters' shares and, according to Defendants, this procedure would invariably control when a state bank merges into a national bank. Yet, the default appraisal procedure in § 215a(c) applies to this situation. " '[W]e should avoid an interpretation of a statute that renders any part of it superfluous and does not give effect to all the words used by Congress.' " *Cheema v. INS*, 350 F.3d 1035, 1041 (9th Cir.2003) (quoting *Nevada v. Watkins*, 939 F.2d 710, 715 (9th Cir. 1991)).

Nevertheless, Defendants are correct that nothing in the federal Act clarifies the scope of § 215a(d)'s deference to state law. Both parties' readings of the law are reasonable. With respect to the issue before us, therefore, the statute is ambiguous. *See* Office of the Comptroller of Currency Interp. Ltr., 1983 WL 145753 (May 27, 1983) ("The federal law governing state bank mergers into national banks is ambiguous on which law governs the procedures for the perfection of dissenters' rights.").

When the text of a statute is ambiguous, we "must consider '[t]he purpose, the subject matter, the context [and] the legislative history' of this statute." *United States v. Miguel*, 49 F.3d 505, 507 (9th Cir.1995) (quoting *Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 313, 98 S.Ct. 584, 54 L.Ed.2d 563 (1978) (alterations in original)). We also "grant a degree of deference to the interpretation of an administrative agency charged with implementing the statute or provision in question when

the agency's interpretation is a permissible construction of the statute." *Luu–Le v. INS*, 224 F.3d 911, 914 (9th Cir.2000) (internal quotation marks omitted).

1. *Section 215a's Purpose and Legislative History*

Congress originally enacted the Act's sections governing bank mergers and consolidations in 1918, with the goal of simplifying the merger of national banking associations:

> It is the purpose of this bill to remove the necessity of liquidation and permit the consolidation to take place upon the affirmative vote of the stockholders of each association, such consolidation being permitted under the charter of either of the existing banks. Proper provision is made by the proposed law to protect any dissenting stockholder in either corporation, who does not desire to be connected with the consolidated bank.

H.R.Rep. No. 408, to accompany H.R.Rep. No. 10205 (1918). An amendment to the statute in 1952 made the Act more like extant state statutes with respect to appraisal rights. *See NoDak Bancorp. v. Clarke*, 998 F.2d 1416, 1422 (8th Cir.1993) (discussing legislative history). Before the 1952 amendment to § 215a(b), the dissenting shareholders of both the acquired bank *and* the acquiring bank were entitled to cash out and to have their shares appraised, making it much more difficult to consolidate banks under federal law than under state law; under state law, only the dissenting shareholders of an acquired bank could seek an appraisal. *Id.*

In 1959, Congress added the text of § 215a(d) that is at issue here as part of a series of "technical amendments" to the national banking laws. S.Rep. No. 730, at 1, to accompany H.R.Rep. No. 8159 (1959). The legislative history accompanying that provision is sparse. As Plaintiff points

out, Congress added the new sections to the Act

> *in order to make uniform* the provisions relating to these consolidations and mergers and to eliminate certain ambiguities. It would eliminate differences in the legal requirements for publication, the requirements of notice of shareholders' meetings, the waiving of such notice, *the procedure to be followed in determining dissenters' rights,* and the payment for the expense of appraisal or reappraisal made by the Comptroller of the Currency.

*Id.* at 6 (emphasis added).

In view of the legislative history's emphasis on uniformity, Plaintiff argues that § 215a(d) must be construed to defer to state-law appraisal procedures in only the narrowest of circumstances. It is hard to reconcile that argument with the fact that the plain text of the statute accommodates varying state-law appraisal procedures in at least some situations. If Congress' chief concern was the uniformity of appraisal procedures, it would not have chosen to direct state banks and their dissenting shareholders to use potentially nonuniform state laws for the appraisal of dissenters' shares. In other words, Congress' general intent is not especially helpful in resolving the particular issue we face here. We are also mindful of the "strong presumption that the plain language of the statute expresses congressional intent, which is 'rebutted only in rare and exceptional circumstances, when a contrary legislative intent is clearly expressed.'" *Royal Foods Co. v. RJR Holdings Inc.,* 252 F.3d 1102, 1108 (9th Cir.2001) (quoting *Ardestani v. INS,* 502 U.S. 129, 135–36, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991)). In the circumstances, the legislative history is of limited assistance.

### 2. The Comptroller's Interpretation of § 215a(d)

■ Although no state or federal case has squarely addressed the issue of how to understand § 215a(d), a series of interpretive letters from the Office of the Comptroller of Currency ("OCC") has outlined an approach that is somewhat illuminating. As the agency charged with administering the Act, the OCC's interpretations of that statute are entitled to deference. *See NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.,* 513 U.S. 251, 256–57, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995) (noting that the OCC "is charged with the enforcement of banking laws to an extent that warrants the invocation of [the rule of deference] with respect to his deliberative conclusions as to the meaning of these laws"). We have held that the OCC's interpretations of the Act contained in amicus briefs and interpretive letters are entitled to "great weight" if those interpretations are reasonable. *Bank of Am. v. City & County of S.F.,* 309 F.3d 551, 563 (9th Cir.2002), *cert. denied,* 538 U.S. 1069, 123 S.Ct. 2220, 155 L.Ed.2d 1127 (2003). Interpretations contained in opinion letters, although not entitled to *Chevron*[2] deference, are " 'entitled to respect' . . . to the extent that those interpretations have the 'power to persuade.' " *Christensen v. Harris County,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)); *see also Bank of Am.,* 309 F.3d at 563 n. 7 ("We find the OCC's opinion letters to be both persuasive and consistent with the National Bank Act and OCC regulations and thus at least 'entitled to respect.' " (quoting *Christensen,* 529 U.S. at 587, 120 S.Ct. 1655)).

---

**2.** *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

As a general matter, the OCC has allowed provisions of a state's corporate code to supplement federal banking regulations so long as those provisions do not conflict with federal law. Indeed, federal law includes state law among its "other sources of guidance" when regulating corporate governance procedures:

> To the extent not inconsistent with applicable Federal banking statutes or regulations, or bank safety and soundness, a national bank may elect to follow the corporate governance procedures of the law of the state in which the main office of the bank is located, the law of the state in which the holding company of the bank is incorporated, the Delaware General Corporation Law, or the Model Business Corporation Act.

12 C.F.R. § 7.2000(b) (citation omitted). Thus, for example, national banks may include in their bylaws state-law procedures for share exchanges because "[f]ederal banking law does not expressly address the authority of national banks to engage in share exchanges." OCC Interp. Ltr. No. 870, 1999 WL 1095647 (Oct. 12, 1999).

With respect to bank mergers, however, federal law *does* expressly address both the authority of state banks to merge into national banks and, in connection with such mergers, the right of dissenting shareholders to be cashed out and to seek an appraisal. As indicated by a pair of OCC interpretive letters, federal law does not defer to a state's general corporate code for the relevant appraisal procedures in this context. In a 1984 interpretive letter, the OCC held that, because Massachusetts state law expressly provides that mergers of state banks into national banks shall be in accordance with federal law and does not set forth an appraisal procedure applicable to such mergers, the dissenters' rights were governed solely by 12 U.S.C. § 215a. OCC Interp. Ltr., 1984 WL 164100 (Feb. 10, 1984).

The dissenter who requested the 1984 opinion letter from the OCC had argued that the general corporate law of Massachusetts should supply both the notice and the appraisal procedures. This, according to the anonymous dissenter, is what Congress meant by "the manner prescribed by the law of the State in such cases ... if such provision is made in the State law." 12 U.S.C. § 215a(d). The Comptroller disagreed, noting that "[t]here is no provision made in Massachusetts law for dissenters' rights for shareholders of state trust companies which merge into national banks." OCC Interp. Ltr. (Feb. 10, 1984). In fact, the only Massachusetts statute that arguably spoke to share appraisals in the context of a merger under § 215a permitted a state bank to "consolidate or merge into or convert into a national banking association in accordance with the laws of the United States and without the approval of any authority of the commonwealth." Mass. Gen. Laws ch. 172, § 36(B).

In a separate letter ruling in 1983, however, the OCC agreed with two state-chartered banks that Indiana statutes did govern the appraisal procedure for dissenting shareholders. OCC Interp. Ltr., 1983 WL 145753 (May 27, 1983). Unlike Massachusetts, Indiana had a statute addressing appraisal procedures in the specific context of bank mergers. Indiana Code § 28–1–7–21 provides for judicial appraisal of dissenting shares *of banks* and does not confine its scope to mergers or consolidations into resulting state banks. Relying on § 215a(d)'s deference to "the manner prescribed by the law of the State in such cases," the OCC interposed no objection to the banks' plan to use the state-law appraisal procedures because "Indiana law contains a comprehensive dissenters' rights statute, including appraisal rights, and a valid legal argument can be advanced to support the banks' position that

state law should apply." Interp. Ltr. (May 27, 1983).

■ The OCC stopped short of fully endorsing the approach of the two Indiana state banks.[3] Nonetheless, reading the 1983 and 1984 interpretive letters side by side, the difference between them is that the OCC approved a merging bank's resort to state-law appraisal procedures where, but only where, a state statute expressly addressed the appraisal of shares in the specific context of a *bank* merger. In other words, the OCC appears to have construed "in the manner prescribed by the law of the State *in such cases*," 12 U.S.C. § 215a(d) (emphasis added), to mean "in cases involving *bank* mergers."

That construction is both reasonable and consistent with the approach that several states take to the regulation of banks and other financial institutions. Nearly all states have enacted statutes that, in one way or another, distinguish between financial institutions and other state-chartered corporations and treat the two separately. In *Burke v. Fidelity Trust Co.*, 202 Md. 178, 96 A.2d 254 (1953), the Maryland Court of Appeals noted this fact when it rejected a dissenting shareholder's equal protection challenge, premised on the state constitution, to the differences between appraisal procedures available to shareholders of state banks and those available to shareholders of other state-chartered corporations. The court based its holding on the unique nature of financial institutions and the desirability of uniform procedures governing bank mergers under state and federal law:

Banks have always been dealt with as a separate class of corporations; indeed the Maryland constitution, Section 48, Article III, authorizing the formation of corporations under general laws, contains a proviso that 'nothing herein contained shall be construed to extend to banks or the incorporation thereof'. That the business of banking bears such a relation to the economic security of the public as to be a legitimate subject of regulation by the State in the exercise of its police power, and of separate treatment, by classification not plainly unreasonable or arbitrary, needs no elaboration.... Chapter 20, [providing the appraisal procedures to be used in state bank mergers,] ... was 'drafted by the Model State Bank Code Committee of the American Bankers' Association to supplement the Act of Congress.' The fact that it applied the same procedure to mergers of State banks as to mergers of national and State banks with a resulting State bank, does not indicate that the classification was unreasonable or arbitrary, but quite the contrary. It may be noted that the appraisal provisions of Section 113 are substantially the same as those prescribed by Sections 34a and 214b, Title 12 U.S.C.A., applicable to national banks.

*Id.* at 258–59.

Because the OCC's implicit interpretation of § 215a(d) is consistent with the statutory text, we conclude that it is "entitled to respect." *Bank of Am.*, 309 F.3d at 563 & n. 7. In the light of that interpretation, we hold that, when a state has no appraisal statute that specifically addresses *bank* mergers, the procedures set forth in § 215a(c) apply to a state bank's merger into a national bank.[4]

---

3. The OCC was reluctant to take a definitive position on the banks' interpretation of the statute "[b]ecause both the statute and the legislative history are vague on this point."

OCC Interp. Ltr., 1983 WL 145753 (May 27, 1983).

4. One issue left open by the OCC's interpretation of § 215a(d), and one we need not re-

B. *Appraisal Procedure Under Arizona Law*

Having held that a state's appraisal statutes apply to a merger under § 215a(d) only when those state statutes expressly contemplate bank mergers, we must next decide whether Arizona has a statute that satisfies that requirement.

1. *Appraisal Statutes Applicable to Bank Mergers*

With minor variations, state statutory provisions for appraising the shares of dissenting shareholders in bank mergers fall into two categories. First, several states have enacted statutes that provide unique appraisal procedures for bank mergers. *See, e.g.,* Ala.Code § 5–7A–44 (1975); Neb. Rev.Stat. §§ 8–182 and 8–229.03; N.M. Stat. § 58–4–10 (1978). For the most part, these state procedures resemble those in the federal Act. Indeed, other than charging a state officer, rather than the Comptroller of Currency, with the duty to cause a reappraisal should one be required, many of these statutes track the text of § 215a(c) nearly verbatim. *See, e.g.,* N.C. Gen.Stat. § 53–16. A few states, however, provide for a judicial determination of the fair value of dissenting shareholders' shares in the context of bank mergers. *See, e.g.,* Ind.Code § 28–1–7–21(g) (providing that "either the corporation or the dissenting shareholder may file a petition in any circuit or superior court in the county in Indiana where the principal office of the corporation is located requesting that the court determine the value of the shares").[5]

In the second category, a number of states have enacted statutes that incorporate by reference general corporate law appraisal procedures into their laws regulating bank mergers. Thus, for instance, under Iowa Code §§ 524.1406 and 524.1417, a dissenting shareholder of a state bank that is merging into either a state or a national bank is entitled to the same appraisal rights as are shareholders of other state-chartered corporations. Although Iowa has some specific provisions for the formula used to evaluate a bank's shares, such as the express allowance of "discounts for minority interest and discounts for lack of marketability," the *procedures* available to dissenting shareholders of a bank are identical to those available to dissenting shareholders of all other state-chartered corporations. Iowa Code § 524.1406.

2. *Arizona Revised Statutes*

█ Arizona has no statute falling into either of the two categories of "bank-specific" appraisal statutes. In some states, courts have held that the general corpo-

---

solve here, is whether § 215(d) defers to state statutes directed solely at mergers resulting in a state bank. This situation arose in *Lewis v. Clark,* 911 F.2d 1558 (11th Cir.1990) (per curiam). In *Lewis,* a Florida state bank merged into a resulting national bank. Florida does have a statutory appraisal procedure for bank mergers. Fla. Stat. § 658.44. The scope of that statute, however, is limited to mergers involving a "resulting state bank or trust company." *Id.* § 658.44(1). The appraisal in *Lewis* was conducted pursuant to the default procedures set forth in § 12 U.S.C. 215a(c). *Lewis,* 911 F.2d at 1560.

**5.** State statutes falling into this first category also vary somewhat with respect to the types of bank mergers covered by the special appraisal procedures. For example, states such as Nebraska limit their appraisal statutes to mergers in which the resulting corporation is a national bank. Neb.Rev.Stat. § 8–182. Other states do precisely the opposite, limiting their bank-specific appraisal procedures to those instances in which both the merging and the resulting corporations are state banks. *See, e.g.,* Colo.Rev.Stat. § 11–103–704; Fla. Sta. § 658.44. Finally, there are states that do not limit the bank-appraisal statutes expressly to either kind of resulting bank.

rate code applies to the merger of a state bank. *See, e.g., In re Fair Value of Shares of Bank of Ripley*, 184 W.Va. 96, 399 S.E.2d 678 (1990) (applying appraisal procedure in general corporate code to merger of state banks). However, we have found, and the parties have cited, no Arizona case that discusses the appraisal remedy in the context of a bank merger.

Arizona Revised Statute § 6–212 is the only arguably relevant state law:

> Nothing in the law of this state shall restrict the right of a state bank to merge with or convert into a national bank. The action to be taken by such merging or converting state bank and its rights and liabilities and those of its stockholders shall be as prescribed at the time of the action by the law of the United States, but the state bank shall give notice to the superintendent of the adoption by its board of directors of any plan of merger or conversion.

That section, however, merely states the truism that, if a state bank merges with or converts into a national bank, the "rights and liabilities" of the bank and its stockholders are to be governed by federal law, which of course governs national banks. Federal law, which supplies the substantive "rights and liabilities" of a merging state bank's shareholders, gives dissenting shareholders the right "to receive the value of[their] shares" at the time a merger is approved. 12 U.S.C. § 215a(b). In other words, the "right" in question, to which Arizona Revised Statute § 6–212 refers, is the right to receive the value of the shares. *See* OCC Interp. Ltr. No. 870, 1999 WL 1095647 (Oct. 12, 1999) ("Both Washington state law and section 215a provide shareholders *the right to dissent and receive fair value for the shares.*" (emphasis added)).

The method of ascertaining the value of the shares is ultimately an "appraisal of such shares of stock in any State bank," which "shall be determined in the manner prescribed by the law of the State in such cases, rather than as provided in this section, if such provision is made in the State law." 12 U.S.C. § 215a(d). Appraisal is not, itself, a "right" but is a method of carrying out the grant of the "right" to receive the value of one's shares. As we explained above, the federal Act defers expressly to state law to supply the appraisal procedure for deciding the value of the shares—but only if state law prescribes an appraisal procedure that is specific to banks. This Arizona appears not to do.

Nothing in Arizona Revised Statutes §§ 10–1320 to 10–1331, which Defendants argue should apply in this case, suggests that those provisions were intended to embrace mergers involving state or national banks. Those statutes apply to all Arizona corporations generally. No Arizona bank-related statute expressly incorporates the provisions found in sections 10–1320 to 10–1331.

Thus, with respect to mergers under 12 U.S.C. § 215a, Arizona's statutory provisions are indistinguishable from those provisions of Massachusetts law discussed in the OCC's 1984 interpretive letter. The generally applicable appraisal procedures make no distinctions among the corporations to which they apply. Viewing the Arizona statutes in the light of our interpretation of § 215a(d), we conclude that Defendants must pursue their right to an appraisal in accordance with the provisions of the National Bank Consolidation and Merger Act.[6]

AFFIRMED.

---

**6.** We express no view as to the value of Defendants' shares.