727 A.2d 414

**Edward F. PINK, et al.**

**v.**

**CAMBRIDGE ACQUISITION, INC., et al.**

**No. 877, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

April 9, 1999.

Thomas G. Harrison (Charles E. Chlan & Associates, on the brief), Bel Air, for appellants.

Joseph M. Fairbanks (Saul, Ewing, Weinberg & Green, on the brief), Baltimore, for appellees.

Argued before EYLER, ADKINS and MARVIN H. SMITH (Retired, Specially Assigned), JJ.

MARVIN H. SMITH (Retired, Specially Assigned), Judge.

The appellants are minority shareholders in Cambridge, Inc. ("Cambridge"), a Maryland corporation doing business in Cambridge, Maryland. Appellants were forced to give up their shares in Cambridge in a management buyout.[1] The appellees are Cambridge, Inc. and Cambridge Acquisition, Inc. ("Acquisition"), a Delaware corporation that was formed to

---

1. Appellants owned a total of 24,050 shares of Class A common stock.

effectuate the buyout. In this appeal, appellants challenge a ruling by the Circuit Court for Dorchester County which terminated their efforts to exercise their appraisal rights. Although, for reasons that we shall explain, we find that we must vacate the judgment and remand the case for further proceedings, appellants shall not prevail.

## APPLICABLE STATUTORY PROVISIONS

The management buyout took the form of a share exchange. Title 3 of the Corporations and Associations article sets forth the procedures for effectuating a share exchange and the rights of objecting shareholders. A preliminary review of the applicable statutory provisions is necessary to a complete understanding of the facts of the case.

Section 3–202 provides, in pertinent part:

(a) *General rule.—* ... [A] stockholder of a Maryland corporation has the right to demand and receive payment of the fair value of the stockholder's stock from the successor if ... [t]he stockholder's stock is to be acquired in a share exchange....

Md.Code (1975, 1993 Repl.Vol., 1998 Cum.Supp.), § 3–202(a) of the Corps. & Ass'ns art. Section 3–203 directs:

(a) *Specific duties.—*A stockholder of a corporation who desires to receive payment of the fair value of his stock under this subtitle:

(1) Shall file with the corporation a written objection to the proposed transaction:

. . .

(ii) With respect to [a share exchange], at or before the stockholders' meeting at which the transaction will be considered;

(2) May not vote in favor of the transaction; and

(3) Within 20 days after the [State] Department [of Assessments and Taxation ("SDAT") ] accepts the articles for record, shall make a written demand on the successor for

payment for his stock, stating the number and class of shares for which he demands payment.

(b) *Failure to comply with section.*—A stockholder who fails to comply with this section is bound by the terms of the ... share exchange....

Code (1975, 1993 Repl. Vol), § 3-203 of the Corps. & Ass'ns art. Under § 3-208(a),

Within 50 days after [SDAT] accepts the articles for record, the successor or an objecting stockholder who has not received payment for his stock may petition a court of equity in the county where the principal office of the successor is located or, if it does not have a principal office in this State, were the resident agent of the successor is located, for an appraisal to determine the fair value of the stock.

Code (1975, 1993 Repl.Vol.), § 3-208(a) of the Corps. & Ass'ns art. Although ordinarily " '[s]ucessor' means ... a corporation acquiring stock in a share exchange," Code (1975, 1993 Repl.Vol., 1998 Cum Supp.), § 1-101(u)(3) of the Corps. & Ass'ns art., § 3-201(b) specifically addresses the rights of objecting stockholders and provides: "When used with reference to a share exchange, 'successor' means the corporation the stock of which was acquired in the share exchange." Code (1975, 1993 Repl.Vol.), § 3-201(b) of the Corps. & Ass'ns art.[2]

## FACTS

In the Spring of 1997, Cambridge's management informed appellants and the other Cambridge shareholders that the Board of Directors had approved a buyout plan by a management group. The group consisted of Cambridge's President, Theodore Dragich, and Secretary, Andrew Morris, as well as

---

**2.** Section 3-201(b) was enacted by 1985 Laws of Maryland, Chapter 657 to permit a share exchange involving the exchange of the stock of one corporation for the stock of another corporation to qualify as a tax free reorganization under the Internal Revenue Code. *See* Bill Analysis for House Bill 819 prepared by the Senate Judicial Proceedings Committee; Report to Legislature regarding House Bill 819 by Maryland State Bar Association's Section of Corporate Banking and Business.

two other persons. The shareholders were told that the majority of Acquisition's stock would be owned by Morgenthaler Ventures Partners IV ("Morgenthaler"), an investment group located in Cleveland, Ohio. The members of the management group would "invest" their shares of Cambridge stock in Acquisition and, in return, would receive a minority of Acquisition's stock. Acquisition would pay cash for the shares of Cambridge's remaining stockholders. Holders of Class A common stock, such as appellants, would receive $40.00 per share. Cambridge would thus become a wholly owned subsidiary of Acquisition and would continue to operate in Cambridge, Maryland with the same management group in place. A letter to one of the stockholders from the chairman of the Cambridge board, dated May 8, 1997 and reproduced in the record extract, explained: "The board has recognized that many of the Company's stockholders want to realize cash for their non-liquid shares so as to have diversification and an opportunity to realize a greater return on the investment."

On July 2, 1997, a special meeting of holders of Class A common stock was held and the shareholders voted on the proposed share exchange. All of the shareholders except appellants approved the proposal. At the meeting, appellants hand-delivered to Cambridge's management written objections to the proposal.[3] Appellants then voted against the proposal.[4] On July 8, counsel for appellants sent a letter, by certified mail, to Dragich. Counsel indicated that he was representing appellants and requested that "Cambridge Inc, and/or *its successor, Cambridge Acquisition, Inc.*, contact my office ... within 20 days of the date Articles are accepted for record by [SDAT]." (Emphasis added.)

Cambridge and Acquisition filed "Articles of Share Exchange" with SDAT on July 18, 1997. The second article expressly states that "Acquisition is the successor in the share

---

**3.** *See* Code (1975, 1993 Repl.Vol.), § 3–203(a)(1)(ii) of the Corps. and Ass'ns art.

**4.** *See id.,* § 3–203(a)(2).

exchange." Thereafter, on July 30, 1997, appellants sent to Acquisition, by certified mail, a letter demanding from Acquisition the payment of fair value for their shares.[5] The face of the letter itself reflects that the letter was sent to (i) Cambridge Acquisition, Inc. at the Cambridge, Maryland location, and (ii) John Lutsi and Peter Taft, the President and Secretary of Acquisition, care of Morgenthaler in Cleveland, Ohio. The return receipts indicate that the envelopes were addressed to (i) Cambridge Acquisition, Inc. *and* Cambridge, Inc. at the Cambridge, Maryland location and, (ii) Cambridge Acquisition, Inc., care of Morgenthaler in Cleveland.

Acquisition did not respond to the demand letter and, on September 5, 1997, appellants filed a "Petition for Appraisal to Determine Fair Value of Stock" in the Circuit Court for Dorchester County.[6] The Petition named Acquisition as the sole defendant, and service was made upon Acquisition's resident agent in Baltimore. On October 15, 1997, Acquisition filed a "Motion to Dismiss or, alternatively, for Summary Judgment." In a supporting memorandum, Acquisition asserted that Cambridge, not Acquisition, was the successor corporation and was therefore the proper party to be named in the demand and petition. Acquisition pointed out that the time for filing a demand and petition against Cambridge had expired.

On October 24, 1997, appellants sent a letter, by certified mail, to Cambridge. The letter contained the heading "AMENDED NOTICE." It stated: "The purpose of this letter is to amend the Demand for Payment of fair value ... and to correct a misnomer contained in the Plaintiff's original notice errantly addressed to Cambridge Acquisition, Inc. on July 30, 1997." The letter went on to state that the plaintiffs "are hereby making written demand, on Cambridge, Inc., for payment of the fair value of the ... shares of Common Stock."

**5.** *See id.,* § 3–203(a)(3).

**6.** *See id.,* § 3–208(a).

On November 4, appellants filed a response to Acquisition's motion in which they asserted, in essence, that the naming of Acquisition rather than Cambridge was nothing more than a misnomer, that they should be permitted to amend the demand letter and the petition for appraisal, and that the amendments should relate back to the dates of the original letter and petition. On that same date, appellants filed an "Amended Petition for Appraisal to Determine Fair Value of Stock." As in the amended demand letter, they explained that the amendment was "to correct a misnomer in naming Cambridge Acquisition, Inc. instead of Cambridge, Inc." Counsel attached to the letter his own affidavit in which he affirmed, in pertinent part:

. . .

4. The demand letter, dated July 30, 1997, and sent certified mail, return receipt requested to both Cambridge, Inc. and Cambridge, Acquisition, inadvertently omitted Cambridge, Inc. as an addressee in the letter[. The letter], however[,] was addressed, on the envelope and certified mail receipt to Cambridge, Inc. and Cambridge, Acquisition, Inc. and to Acquisition's President, John Lutsi.

5. The demand letter was intended to serve as notice to both Cambridge, Inc. and Cambridge Acquisition, Inc. of the Plaintiff's assertion of their right to payment of the fair value of their respective shares in Cambridge, Inc.

6. The naming of Cambridge Acquisition, Inc., in the Plaintiff's Original Petition was a misnomer.

. . .

The amended petition was served upon Theodore Dragich.

On November 24, 1997, Cambridge and Acquisition filed a joint "Motion to Dismiss or to Strike Amended Petition."[7] Cambridge and Acquisition argued that appellants failed to

---

7. Acquisition joined in the motion even though it was not named in the petition. Cambridge and Acquisition have been represented by the same counsel at all times relevant to this appeal.

comply with the requirements of (i) § 3–203(a)(3) of the Corporations and Associations article, in that they failed to make a written demand upon *Cambridge* within 20 days of SDAT's acceptance of the Articles of Share Exchange, (ii) § 3–208(a) of the Corporations and Associations article, in that they failed to file a petition for appraisal against *Cambridge* within 50 days of SDAT's acceptance of the Articles.

A hearing was held in the Circuit Court for Dorchester County on March 4, 1998 on Acquisition's "Motion to Dismiss or, alternatively, for Summary Judgment" and the joint "Motion to Dismiss or to Strike Amended Petition." The court took the matters under advisement and subsequently issued a written "Opinion and Order." In the "Opinion and Order," the court granted Acquisition's motion for summary judgment, seemingly in favor of both Acquisition and Cambridge. The court determined that §§ 3–203 and 3–208 required strict compliance, and concluded:

It is clear that Plaintiffs made their demand upon Cambridge Acquisition, Inc. [Acquisition], being under no obligation to accede to Plaintiff's demand, made no effort to do so or to delude Plaintiffs into believing that it would. Indeed, under the statute, [Acquisition] had no authority to cause an appraisal to be made of Plaintiffs stock holdings in Cambridge, Inc., or to pay them the fair market value of that stock. Conversely, Cambridge had no obligation to cause such an appraisal to be made or to tender such payment, unless and until a demand was made upon it in compliance with the statute.

The court observed that appellants' assertion that the naming of Acquisition in the original demand letter and petition was a mere misnomer was inconsequential in light of its application of the rule of strict compliance. It nevertheless noted that "[t]he original petition contains much fodder for the raising of a skeptical eyebrow," in that the petition "names [Acquisition] as the only Defendant and avers that [appellants] made their demand upon [Acquisition], and that [Acquisition] failed to respond to that demand." The court further observed that "[i]n light of the Court's disposition of the [summary judg-

ment] motion[ ], ... it is unnecessary to rule upon the motion to strike."

## ISSUES

Appellants argue, in essence, that

I. The trial court erred in determining that the rule of strict compliance foreclosed them from amending their demand letter and their petition for appraisal, and

II. The original demand letter is a "paper" subject to amendment under Md. Rule 2–342.

## DISCUSSION

### - Procedural Improprieties -

Preliminarily, we point out that, regardless of the propriety of the trial court's application of the rule of strict compliance, we must vacate the court's "Opinion and Order" and remand the case to that court to correct certain procedural improprieties.

As we have explained, the original petition for appraisal was filed against Acquisition alone. Acquisition alone responded by filing the "Motion to Dismiss or, alternatively, for Summary Judgment." Although Acquisition contended in its supporting memorandum that the time for filing a petition against Cambridge had expired, Acquisition was not the proper party to assert Cambridge's position and the trial court could not properly resolve appellants' rights against Cambridge in ruling on Acquisition's motion. The court nevertheless granted Acquisition's motion for summary judgment on the ground that Acquisition was not the successor corporation *and* that the rule of strict compliance foreclosed appellants from pursuing their appraisal rights against Cambridge. The court should have limited its decision on Acquisition's motion to the propriety of Acquisition's argument that it was not the successor corporation—an argument that appellants conceded when they filed the amended petition against Cambridge.

■ The trial court should then have turned its attention to the "Motion to Dismiss or Strike Amended Petition." As an incidental matter, Acquisition's participation in that motion was improper, as Acquisition was not named in the amended petition. It is apparent from the court's "Opinion and Order" that the court wished to disallow the amendment of the original petition. *See* Md. Rule 2–341(a). Cambridge's "Motion to Dismiss or Strike Amended Petition," not Acquisition's "Motion to Dismiss or, alternatively, for Summary Judgment," was the proper vehicle for doing so.[8]

On remand, we instruct the trial court to issue an order addressing Acquisition's motion as it pertains to Acquisition alone. We further instruct the court to strike Acquisition from the joint motion to dismiss or strike the amended pleading, and to issue a second order addressing the motion to dismiss or strike as it pertains to Cambridge alone.

### - Propriety of Trial Court's Legal Analysis -

We sympathize with appellants' plight in the instant matter. As the trial court pointed out, "[i]f one relies upon the connotation given the word 'successor' as it is commonly used, the term would seem more likely to refer to the corporation doing the acquiring than to the corporation whose stock is being acquired." Indeed, successor is defined in accordance with common usage in the general definition section for the Corporations and Associations article, *see* § 1–101(u)(3), although a definition specific to successors to share exchanges appears in § 3–201(b). Appellants' counsel referred to Acquisition as Cambridge's "successor" in a July 8, 1997 letter to Cambridge President Theodore Dragich, and Dragich did nothing to correct counsel's obvious misunderstanding. In fact, the Articles of Share Exchange filed with SDAT by Cambridge and Acquisition, specifically describe Acquisition as "the successor in the share exchange." It would thus be

---

8. Had the court permitted the amendment, Cambridge would have been substituted for Acquisition as defendant and Acquisition's "Motion to Dismiss or, alternatively, for Summary Judgment" would have become moot.

easy to understand why appellants might have mistaken Acquisition for the successor corporation.[9]

We nevertheless have no quarrel with the trial court's application of the rule of strict compliance to the case. It is well-established that statutes "in contravention of the common law of this State . . . should be strictly construed." *Bradshaw v. Prince George's County,* 284 Md. 294, 302, 396 A.2d 255, 260 (1979). Thus,

> [s]tatutes which . . . establish rights or provide benefits which were not recognized by the common law have frequently been held subject to strict, or restrictive, interpretation. Where there is any doubt about their meaning or intent they are given the effect which makes the least rather that the most change in the common law.

3 Norman J. Singer, *Sutherland Statutory Construction* § 61.01 at 171 (5th ed.1992). *See also* 73 Am.Jur.2d, *Statutes* § 287 at 448–49 (1974).

In *Roselle Park Trust Co. v. Ward Baking Corp.,* 177 Md. 212, 219, 9 A.2d 228, 231 (1939), the Court of Appeals explained that corporate consolidations and mergers were not recognized at common law and "were not authorized by statute in this state . . . until the passage of chapter 471 of the Acts of 1868." [10] The right of dissenting stockholders to an appraisal for fair value was not authorized by statute until "the passage of chapter 240 of the Acts of 1908." *Id.* The Court thus concluded that statutes regarding corporate reorganization and appraisal rights require strict compliance. *Roselle Park Trust Co.* involved chapter 551 of the Acts of 1935,

---

**9.** We recognize that appellants argued below and argue in this appeal that they did *not* mistake Acquisition for the successor. They have at all times maintained that the naming of Acquisition was a misnomer, and that they "were under the mis-impression that Cambridge and Acquisition were, for all intents and purposes one in [sic] the same." As the trial court determined, even if a trier of fact were to accept this assertion—and the trial court strongly implied that it would not do so—it is of no consequence if the rule of strict compliance is applied.

**10.** Share exchanges were first authorized by statute in Maryland with the passage of 1976 Laws of Maryland, chapter 567.

a predecessor to Title 3 of the Corporations and Associations article. A stockholder who opposed a corporate merger timely filed its demand for payment of fair value against the successor corporation but failed to file its petition for appraisal within the time—then 30 days—set forth by the statute. The Court of Appeals stated: "It is our opinion ... that the provisions of the statute should be construed strictly, and, accordingly, that the thirty-day period must be regarded as a mandatory limitation." *Id.* at 221, 9 A.2d at 232. *See* Herbert M. Brune, Jr., *Maryland Corporation Law and Practice* § 317 at 384 (revised ed.1953) ("the conditions set forth in [Title 3 of the Corporations and Associations article] to ripen the right of appraisal must be strictly complied with or the right is lost; and the procedure is the same regardless of the type of corporate action which is objected to").[11]

This Court reiterated the *Roselle Park Trust Co.* holding in *Sornberger v. Chesapeake and Ohio Ry. Co.*, 81 Md.App. 14, 566 A.2d 503 (1989), *cert. denied*, 319 Md. 72, 570 A.2d 864 (1990), which also involved a corporate merger. The dissenting stockholder in *Sornberger* filed a petition for appraisal within the time required but failed to file the preliminary demand for payment of fair value. In affirming the trial court's dismissal of the stockholder's petition, this Court rejected the stockholder's argument that the petition was filed within the time limitation for filing the demand and should therefore be considered a proper substitute for the demand. We explained:

> The language of the three-step appraisal remedy process is specific, and does not tolerate deviation from its terms. It is not our prerogative to take a procedure that is specifically

---

**11.** Thirty-five states have attempted to clear up any confusion inherent in the exercise of appraisal rights in general by adopting a provision of the Model Business Corporation Act that requires corporations contemplating actions that would create appraisal rights to notify dissenters of precisely where, when, and to whom their demands must be sent. *See* Model Business Corporation Act § 13.22 at 13–53—13–57 (3d ed.1997). Under § 13.22, such corporations must supply dissenters with a form for making demands and a copy of the applicable statute. *Id.* Maryland has not adopted a version of § 13.22.

provided in the Corporations and Associations article and alter it to accommodate appellant. Any alteration must come from the General Assembly, and not this court.

*Id.* at 27, 566 A.2d at 509–10. *See also Ash v. Citizens Building and Loan Assoc. of Montgomery County,* 225 Md. 395, 401–02, 170 A.2d 750, 753 (1961) (relying on *Roselle Park Trust Co.* in affirming a trial court's dismissal of a petition for appraisal as untimely); *First American Bank of Maryland v. Shivers,* 97 Md.App. 405, 421–24, 629 A.2d 1334, 1342–43 (1993) (explaining that the requirement set forth in Code (1975, 1993 Repl.Vol.), § 3–207 of the Corps. & Ass'ns art., that a successor corporation must notify an objecting shareholder by certified mail when the articles are accepted by SDAT, is mandatory).

■ Cambridge concedes that it had actual notice of both the original demand letter and the original petition for appraisal of fair value within the statutory time frames. Appellants thus argue that the rule of strict compliance is inapplicable to this case, and that they should be permitted to amend their demand letter and petition. Appellants direct us to no case regarding appraisal rights where the rule of strict compliance has been ignored, and we know of no such case. In *Shivers,* 97 Md.App. 405, 629 A.2d 1334, this Court rejected a successor corporation's argument that notice of the effective date of a merger that it sent through the regular mail to a dissenting shareholder was sufficient under § 3–207, even though the statute requires notice by certified mail. We observed that although the notice arrived in the stockholder's mail within the statutory period, it was undisputed that the stockholder did not actually read the notice until after the period had run. We then suggested that even if the stockholder had received actual notice, the notice was improper and would not have triggered the running of the statutory period for the filing of the stockholder's petition for appraisal. We explained: "Technical or not, the requirement of certified mail is mandated by CA § 3–207(b). The breach of this require-

ment renders the given notice ineffective." 97 Md.App. at 424, 629 A.2d at 1343.

As the court below observed in its "Opinion and Order,"

More than fifty terms of the General Assembly have convened and adjourned without the enactment of any statutory dilution of the *Roselle Park* ruling. Clearly, if a less harsh result were intended or if less than strict compliance were deemed sufficient, the Legislature would have so provided by now. Yet, the interpretation and application of the statute remain unchanged.

█ In light of our conclusion that it was mandatory that appellants timely file their demand letter and petition against *Cambridge* within the statutory time frames, whether appellants' failure to name Cambridge in the originals was a mere misnomer, as opposed to a mistake as to which corporation was the successor, is inconsequential. Even assuming *arguendo* that the failure was a misnomer, that the petition could therefore be amended to name Cambridge as the defendant, and that the amended petition would "relate back" to the date of the filing of the original petition against Acquisition, *See* Md. Rule 2–341(b) (permitting amendment of pleadings to "correct misnomer of party"); *McSwain v. Tri–State Transp. Co., Inc.,* 301 Md. 363, 370–71, 483 A.2d 43, 46–47 (1984) (amendment correcting misnomer related back to filing of original complaint), there is no vehicle by which the demand letter could be amended and caused to "relate back" to the original letter. Despite appellants' assertions to the contrary, a demand letter, which is never filed with a court, is not a "paper" that can be amended pursuant to Md. Rule 2–342. Title 2 of the Maryland Rules "applies to civil matters *in the circuit courts . . . ."* Md. Rule 1–101(b) (emphasis added). The rules do not purport to govern private correspondences, even when such correspondences are contemplated by statute and eventually lead to litigation in a circuit court. *See generally* Md. Rule 1–301(a) (setting forth requirements for papers filed with a court).

**76**

JUDGMENT OF THE CIRCUIT COURT FOR DORCHESTER COUNTY VACATED AND CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; APPELLANTS TO PAY THE COSTS.